IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division



| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KATHERINE MARGARET BUCHANAN,<br><br>*Defendant*. | Case No. 1:25-CR-150 (RDA)<br><br><u>Count 1</u>: 52 U.S.C. §§ 30114(b) & 30109(d)<br>Embezzlement of Funds Contributed to a<br>Federal Candidate<br><br><u>Count 2</u>: 26 U.S.C. § 7201<br>Tax Evasion |

**CRIMINAL INFORMATION**

THE UNITED STATES ATTORNEY CHARGES THAT:

**GENERAL ALLEGATIONS**

At all times relevant to this Criminal Information:

1.      The defendant, KATHERINE MARGARET BUCHANAN, was the campaign treasurer for several election campaign committees and political action committees ("PACs"), including the campaign committees for U.S. Senators Tim Kaine and Mark Warner of Virginia, and former U.S. Representative Stephanie Murphy of the Seventh Congressional District of Florida.

2.      The election and re-election campaign committee for Senator Kaine was officially known as "Kaine for Virginia."   The defendant also served as campaign treasurer for two PACs that supported Senator Kaine: "Kaine Victory Fund" and "Common Ground PAC."

3.      The election campaign committee for Senator Warner was officially known as "Friends of Mark Virginia."   The defendant also served as campaign treasurer for two PACS that supported Senator Warner: "Forward Together" and "One Virginia Fund."

4.      The election campaign committee for Representative Murphy was officially known as "Stephanie Murphy for Congress."   The defendant also served as campaign treasurer for "Developing a New Generation," also known as "DANG PAC," a PAC that supported Representative Murphy.

5.      At all times relevant to this Information, Senator Kaine, Senator Warner, and Representative Murphy were each a "candidate" for "federal office" as those terms are defined in Title 52, United States Code, Section 30101(2)–(3).

6.      As campaign treasurer for the aforementioned campaign committees and PACs, the duties of the defendant included, among others:

       a.   Maintaining financial records of and for the committees;

       b.   Keeping track of the contributions to and expenditures of the committees;

       c.   Filing necessary submissions with the Federal Election Commission ("FEC") reporting, among other things, contributions, contributors, expenditures, and the overall financial condition of the committee; and

       d.   Issuing Forms 1099 reporting nonemployee compensation paid by the campaign committees and PACs.

7.      The FEC administers and enforces the Federal Election Campaign Act ("FECA"). The FECA requires candidate committees to file periodic reports disclosing the money that they raise and spend.

8.      Kaine for Virginia, Stephanie Murphy for Congress, and Mark Warner for Virginia each maintained bank accounts into which campaign "contributions"—as such contributions are defined in Title 52, United States Code, Section 30101(8)—were deposited and from which expenditures—as defined in Title 52, United States Code, Section 30101(9)—were paid. These

expenditures were either paid by check written on bank accounts held by the campaign committee or charged to credit cards held in the name of the campaign committee or an individual user authorized by the campaign. The campaign credit card was paid off using funds from the bank accounts into which contributions were deposited.

9. The defendant was a signatory on the bank accounts that received contributions for Kaine for Virginia, Stephanie Murphy for Congress, and Friends of Mark Warner. Additionally, the defendant was an authorized user on the credit cards for these campaign committees.

10. As a campaign treasurer, the defendant also acted as the custodian of records for the campaign committees and PACs. Title 52, United States Code, Section 30102 requires the campaign treasurer of a campaign committee for an individual seeking federal office to keep records for three years for all committee contributions, expenditures, receipts, and disbursements. The defendant was the sole person within the Kaine, Warner, and Murphy campaign committees responsible for these financial records. There were no periodic reviews or audits of the records or accounting practices associated with the financial activities of the campaign committees other than the filing of required reports with the FEC, all of which were generated by the defendant in her capacity as campaign treasurer.

11. The defendant performed her duties as campaign treasurer chiefly from her home in Alexandria, Virginia. At her home, the defendant maintained a computer which she used for several tasks required of her as campaign treasurer, including but not limited to generating and filing documents and forms with the FEC. The defendant filed these forms with the FEC by transmitting the electronically created forms with the data inputted by the defendant and other campaign personnel through the internet.

12.    The primary method of disclosure by candidate election committees is through an FEC Form 3, Reports of Receipts and Disbursements for an Authorized Committee.    Among other things, the Form 3 lists for the reporting period the net contributions, total operating expenditures, and cash on hand.    These forms are electronically filed with the FEC by the campaign committee's campaign treasurer and are thereafter made public through a variety of means including an online database controlled by the FEC.    The FEC maintains offices in the District of Columbia, where an electronically filed Form 3 is received.

13.    Each Form 3 contains the following warning: "Submission of false, erroneous, or incomplete information may subject the person signing this Report to the penalties of 52 U.S.C. § 30109."    The form is digitally signed by the placement of the filer's name on the line marked "Signature of Treasurer."

14.    The FECA requires that both contributions to, and expenditures of, a candidate's campaign committee aggregating in excess of $200 during an election cycle, be reported on the FEC Form 3.

15.    The Internal Revenue Service ("IRS") was an agency of the United States Department of Treasury responsible for administering the federal tax laws of the United States and for the collection of taxes owed to the United States.

16.    All United States persons were required to file a U.S. Individual Income Tax Return ("Form 1040"), when their gross income exceeds the statutory filing threshold.

**EMBEZZLEMENT SCHEME**

17.    From in and around 2020 to in and around 2024, in the Eastern District of Virginia and elsewhere, the defendant, KATHERINE MARGARGET BUCHANAN, did knowingly devise and intend to devise a scheme and artifice to defraud multiple political campaign committees and

PACs and their contributors, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

## Purpose and Object of the Scheme

18.    The primary object of the scheme was for the defendant to enrich herself by embezzling funds from the campaign committees and PACs for whom she served as treasurer, and converting that money for her personal use or the use of her family members.

## Manner and Means of the Scheme

In furtherance of the scheme to defraud, and to accomplish its unlawful objects, the defendant used the following manner and means, among others:

19.    The defendant had two personal American Express credit cards, with the credit card numbers ending in -3000 ("AMEX-3000") and -8009 ("AMEX-8009").    The defendant used funds from the various campaign committees and PACs for whom she served as treasurer to make payments to her personal credit card.

20.    In her role as treasurer for the various committees, the defendant was often issued a campaign or PAC credit card, to be used to make authorized purchases.    The defendant used official campaign or PAC credit cards to make unauthorized purchases of a personal nature.

21.    The defendant also used her access as treasurer to make unauthorized payments from campaign and PAC bank accounts with contributor funds to third parties, for her own personal enrichment.

22.    The defendant also used her access as treasurer to make unauthorized payments from campaign and PAC bank accounts with contributor funds to her own bank accounts.

23.    To disguise these misappropriation of campaign funds, the defendant caused false FEC Forms 3 to be filed with the FEC that either failed to report money that the defendant

converted to her own personal use, or falsely reported the misappropriations as legitimate campaign expenditures.

24.    The defendant also issued false Forms 1099 to herself which failed to report money that the defendant converted to her own personal use.

## COUNT ONE
### (Embezzlement and Conversion of Funds Contributed to a Federal Candidate)

25.    Paragraphs 1 to 24 of this information are realleged and incorporated as if fully set forth herein.

26.    From in and around 2020 to in and around 2024, in the Eastern District of Virginia and elsewhere, the defendant, KATHERINE MARGARGET BUCHANAN, knowingly and willfully converted contributions to a federal candidate to her personal use, in an amount which aggregated to $25,000 and more during a calendar year, that is, contributions to Mark Warner and Tim Kaine, candidates for the office of Member of the United States Senate; and to Stephanie Murphy, a candidate for the office of Member of the United States House of Representatives.

(All in violation of 52 U.S.C. §§ 30114(b) and 30109(d)(1)(A)(i).)

## COUNT TWO
### (Tax Evasion)

27. Paragraphs 1 to 24 of this information are realleged and incorporated as if fully set forth herein.

28. From in and around 2020 to in and around 2024, in the Eastern District of Virginia and elsewhere, the defendant, KATHERINE MARGARGET BUCHANAN, a resident of Alexandria, Virginia, willfully attempted to evade and defeat income tax due and owing by her and her spouse to the United States of America, for the calendar year 2020, by preparing and causing to be prepared, and signing and causing to be signed, a false and fraudulent U.S. Individual Income Tax Return, Form 1040, which was submitted to the Internal Revenue Service. On that tax return, the defendant reported and caused to be reported that her and her spouse's joint taxable income for the calendar year 2020 was $357,760, and that the amount of tax due and owing was $68,056. In fact, as the defendant knew, the defendant and her spouse had joint taxable income for the calendar year 2020 that was greater than the amount reported on the tax return, and as a result of such additional taxable income, there was additional tax due and owing to the United States of America.

(All in violation of 26 U.S.C. § 7201.)

Respectfully submitted,

ERIK S. SIEBERT
UNITED STATES ATTORNEY

Date: 6/23/25

By: _____
Katherine E. Rumbaugh
Assistant United States Attorney